UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK
✦✦✦✦✦✦✦✦✦✦✦✦✦✦✦✦✦✦✦✦✦✦✦✦✦✦✦✦✦✦✦✦✦✦✦✦✦✦✦✦✦✦✦✦✦✦✦✦✦

**Phyllis A. Mitchell, both individually and on behalf of a class of others similarly situated,**

          **Plaintiff,**

      -v-           **8:06-CV-00254**

**The County of Clinton; David Favro, both individually and in his official capacity as Sheriff of the County of Clinton; Jerry Maggy, both individually and as Undersheriff of the County of Clinton; Michael Smith, both individually and as Major in the Clinton County Sheriff's Department,**

          **Defendants.**

✦✦✦✦✦✦✦✦✦✦✦✦✦✦✦✦✦✦✦✦✦✦✦✦✦✦✦✦✦✦✦✦✦✦✦✦✦✦✦✦✦✦✦✦✦✦✦✦✦

APPEARANCES:

Cuneo, Gilbert & LaDuca, LLP
Alexandra C. Warren, Esq., of Counsel
Charles J. LaDuca, Esq., of Counsel
Jonathan W. Cuneo, Esq., of Counsel
507 C Street, N.E.
Washington, D.C. 20002
and
Beranbaum, Menken & Ben-Asher, LLP
Bruce E. Menken, Esq., of Counsel
Jason J. Rozger, Esq., of Counsel
80 Pine Street, 32nd Floor
New York, New York 10005
and
Charles A. Schneider, Esq., of Counsel
Gary E. Mason, Esq., of Counsel
The Mason Law Firm, PLLC
1225 19th Street N.W., Suite 500
Washington, D.C. 20036
and
Elmer R. Keach, III
1040 Riverfront Center
P.O. Box 70
Amsterdam, New York 12010
Attorneys for Plaintiff and Proposed Class

Girvin & Ferlazzo, P.C.
Gregg T. Johnson, Esq., of Counsel
Jacinda Hall Conboy, Esq., of Counsel
20 Corporate Woods Boulevard
Albany, New York  12211
Attorneys for Defendants

**Hon. Norman A. Mordue, Chief U.S. District Judge:**

## MEMORANDUM-DECISION AND ORDER

## BACKGROUND

Plaintiff moves (Dkt. No. 35) for class certification in this action alleging federal civil rights violations stemming from defendant Clinton County's practice and policy of strip searching all pretrial detainees admitted to the Clinton County Jail on charges of misdemeanors or lesser crimes, regardless of whether there was reasonable suspicion that such detainees possessed contraband or weapons.  Plaintiff relies on Second Circuit precedent holding that "persons charged with a misdemeanor and remanded to a local correctional facility... have a right to be free of a strip search absent reasonable suspicion that they are carrying contraband or weapons[.]" *Shain v. Ellison*, 273 F.3d 56, 66 (2d Cir. 2001).  The complaint seeks declaratory and injunctive relief, class certification, monetary damages, and counsel fees.

Plaintiff alleges that defendants had a blanket strip search policy and practice prior to October 24, 2003; that on that date defendant Major Michael Smith, administrator of Clinton County Jail, wrote a memo revising the policy; that the memo was read to the corrections officers but not distributed to them; and that thereafter the corrections officers continued to carry out the practice of blanket strip searches.

Plaintiff moves for certification of the following two subclasses:

> Class A
> All persons who were placed into the custody of the Clinton County Jail

>after being charged with misdemeanors, violations, violations of probation or parole, traffic infractions, civil commitments or other minor crimes and were strip searched upon their entry into the Clinton County Jail pursuant to the policy, custom and practice of the Clinton County Sheriff's Department and the County of Clinton, from February 28, 2003 until October 24, 2003. Specifically excluded from the class are Defendants and any and all of their respective affiliates, legal representatives, heirs, successors, employees or assignees.
>
>Class B
>All persons who were placed into the custody of the Clinton County Jail after being charged with misdemeanors, violations, violations of probation or parole, traffic infractions, civil commitments or other minor crimes and were strip searched upon their entry into the Clinton County Jail pursuant to the policy, custom and practice of the Clinton County Sheriff's Department and the County of Clinton, from October 24, 2003 through the date on which the Clinton County Sheriff's Department and/or the County of Clinton cease or ceased, or are enjoined from, enforcing their unconstitutional policy, practice and custom of conducting strip searches absent reasonable suspicion. Specifically excluded from the class are Defendants and any and all of their respective affiliates, legal representatives, heirs, successors, employees or assignees.

Plaintiff requests that the Court certify this action as a money damages class action under Fed. R. Civ. P. 23(b)(3) and/or an injunctive relief class action under Rule 23(b)(2). In the alternative, plaintiff requests partial certification. The Court grants class certification as set forth below.

**APPLICABLE LAW**

A plaintiff seeking class certification has the burden of showing that the class satisfies all the requirements of Federal Rule of Civil Procedure 23(a), *i.e.*, numerosity, commonality, typicality, and adequacy,[1] as well as one of the subsections of Rule 23(b). *See In re Visa*

---

[1] Fed. R. Civ. P. 23(a) provides:
Prerequisites to a Class Action. One or more members of a class may sue or be sued as representative parties on behalf of all only if (1) the class is so numerous that joinder of all members is impracticable, (2) there are questions of law or fact

-3-

*Check/MasterMoney Antitrust Litig.*, 280 F.3d 124, 132-33 (2d Cir. 2001). Courts have also required a showing that the class meets the implicit threshold requirement of ascertainability. *See Dunnigan v. Metro. Life Ins. Co.*, 214 F.R.D. 125, 135 (S.D.N.Y. 2003). A district court addressing such a motion must conduct a "rigorous analysis" of the Rule 23 requirements; it should not, however, inquire into the merits of the case. *See Heerwagen v. Clear Channel Communications*, 435 F.3d 219, 225 (2d Cir. 2006).

## DISCUSSION

**Numerosity**

The numerosity requirement of Rule 23(a)(1) is satisfied by a showing that, due to the number of potential class members, joinder of individual members as named defendants would be impracticable. *See Consolidated Rail Corp. v. Town of Hyde Park*, 47 F.3d 473, 483 (2d Cir. 1995). In the case at bar, the numerosity of plaintiff's proposed class is supported by the deposition testimony of Major Smith, administrator of the jail since 1996, that the average capacity of the facility is about 230 detainees, that in 2004 approximately 1400 detainees entered the facility, and that roughly half of them, or perhaps 900, were booked on misdemeanor or other minor charges. Defendants – who presumably are in possession of the precise figures – submit no evidence on the question, but argue that plaintiff's evidence is insufficient to establish numerosity.

The proposed Class A covers the eight-month period from February 28, 2003 until October 24, 2003. Assuming that the number of misdemeanor detainees in each month of 2003

---

common to the class, (3) the claims or defenses of the representative parties are typical of the claims or defenses of the class, and (4) the representative parties will fairly and adequately protect the interests of the class.

was roughly the same as in 2004, the Court calculates that Class A comprises more than 500 people. Class B, which, as alleged, covers a longer period of time,[2] would exceed this number. It is true that plaintiff's evidence is imprecise; nevertheless, the undisputed evidence before the Court suffices to establish that the members of the entire class number well into the hundreds, very likely over a thousand. Clearly, due to the number of potential class members, joinder of individual members as named defendants is impracticable. The numerosity requirement has been met.

**Commonality**

Under Rule 23(a)(2), plaintiff must also show commonality, that is, that the action raises an issue of law or fact common to the class. *See Robinson v. Metro-North Commuter R.R.*, 267 F.3d 147, 155 (2d Cir. 2001). Plaintiff has shown the existence of legal and factual issues common to all proposed members of the proposed class, *i.e.*, what strip search policy and practice existed, whether the policy and/or practice were unconstitutional, and whether some or all of the defendants are liable. The requirement of commonality is met.

The Court adopts plaintiff's proposal to divide the class into two subclasses based on some evidence that defendants' policy and/or practice changed as a result of a memo by Major Smith dated October 24, 2003. Class A comprises pre-October 24, 2003 misdemeanor detainees who were strip searched pursuant to defendants' policy and/or practice; Class B comprises post-October 24, 2003 misdemeanor detainees who were strip searched pursuant to defendants' policy and/or practice. Class A's issues would differ from Class B's issues if – and to the extent that –

---

[2] There is evidence that the policy and practice of which plaintiff complains ceased in January 2006.

the policy and/or practice prior to October 24, 2003 differed from the policy and/or practice thereafter. There is conflicting record evidence regarding what policy and practice existed prior to the October 24, 2003 memo, whether the memo changed the policy or merely clarified it, and whether the memo effected any alteration in the corrections officers' practices. Moreover, the differing evidentiary questions may result in different procedural issues. For example, plaintiff's counsel opines that defendants' liability with respect to Class A will be the subject of a summary judgment motion and that defendants' liability with respect to Class B will be determined in a jury trial. Therefore, dividing the class into subclasses will enhance the commonality of the factual issues in each subclass.

**Typicality**

The typicality factor, set forth in Rule 23(a)(3), concerns whether the claim of the class representative is typical of the claims of the class. *See Robinson*, 267 F.3d at 155. Plaintiff must show that each class member's claim "arises from the same course of events, and each class member makes similar legal arguments to prove the defendant's liability." *Id.* (citation omitted). Here, the named plaintiff, Phyllis A. Mitchell, claims that she was a misdemeanor detainee, that she was strip searched without reasonable suspicion pursuant to defendants' blanket policy and practice, that the policy and practice were unconstitutional, and that defendants are liable. Her claim thus arises from the same course of events and is based on the same legal arguments as the claim of every other proposed class member. The requirement of typicality is met.

The typicality of the named plaintiff's claims is increased by the division of the class into Class A and Class B. As noted above in connection with the commonality inquiry, the evidentiary issues arising in Class A's claims, which accrued prior to the October 24, 2003 memo,

-6-

may differ in some respects from those arising in Class B's claims, which accrued after the memo.  Ms. Mitchell's detention occurred on March 27, 2003; as such, her claims are typical of Class A's claims.

**Adequacy**

With respect to the adequacy of the proposed class representative under Rule 23(a)(4), defendants argue that plaintiff's interests are antagonistic to the interests of other members of the proposed class due to the effect on some potential class members of the limitation on money damages imposed by the Prison Litigation Reform Act, 42 U.S.C. § 1997e(e).  United States District Judge Lawrence E. Kahn rejected this argument in *Kelsey v. County of Schoharie*, 2007 WL 603406, *10-11 (2007).  This Court agrees that the issue does not impair the adequacy of the named plaintiff as class representative.

With respect to the adequacy of the named plaintiff's knowledge of the case, a review of her deposition transcript establishes that she has an adequate understanding of the lawsuit and her role as class representative.  There is no reason to believe that, during pretrial discovery and at trial, she "will give misleading and contradictory testimony with regard to basic issues in the case that might make [her] claims subject to unique defenses." *Baffa v. Donaldson, Lufkin & Jenrette Securities Corp.*, 222 F.3d 52, 61 (2d Cir. 2000) (citation omitted).  The named plaintiff meets the requirement of adequacy for the entire class.

**Ascertainability**

As noted, courts have also required a showing that the class is ascertainable, that is, that it is "defined by objective criteria that are administratively feasible, without a subjective determination." *Dunnigan*, 214 F.R.D. at 135.  The class must be readily identifiable "so that the

court can determine who is in the class, and thus, who is bound by the ruling." *McBean v. City of New York*, 228 F.R.D. 487, 492 (S.D.N.Y. 2005).  Here, the class members are all those admitted to the facility during specified time periods on specific charges and subjected to strip searches.  Presumably, these matters are reflected in defendants' records.  The class is ascertainable.

**Rule 23(b)**

In addition to meeting all four criteria of Rule 23(a), a plaintiff seeking class certification must satisfy one element of Rule 23(b).[3]  Plaintiff contends that she has met the requirements of Rule 23(b)(3) because she has shown that common questions predominate over questions affecting individual plaintiffs and that a class action the best method of adjudicating the case.

The predominance requirement tests whether proposed classes are "sufficiently cohesive to warrant adjudication by representation."  *Amchem Prods. Inc. v. Windsor*, 521 U.S. 591, 623 (1997).  A plaintiff must show that the issues in the class action that are subject to generalized

---

[3] Rule 23(b) provides in part:
> Class Actions Maintainable. An action may be maintained as a class action if the prerequisites of subdivision (a) are satisfied, and in addition:
> ***
>> (2) the party opposing the class has acted or refused to act on grounds generally applicable to the class, thereby making appropriate final injunctive relief or corresponding declaratory relief with respect to the class as a whole; or
>> (3) the court finds that the questions of law or fact common to the members of the class predominate over any questions affecting only individual members, and that a class action is superior to other available methods for the fair and efficient adjudication of the controversy. The matters pertinent to the findings include: (A) the interest of members of the class in individually controlling the prosecution or defense of separate actions; (B) the extent and nature of any litigation concerning the controversy already commenced by or against members of the class; (C) the desirability or undesirability of concentrating the litigation of the claims in the particular forum; (D) the difficulties likely to be encountered in the management of a class action.

proof – and thus applicable to the class as a whole – predominate over those issues that are subject only to individualized proof. *See In re Visa Check,* 280 F.3d at 136.

The putative class here comprises all persons who were placed into the custody of the Clinton County Jail after being charged with misdemeanors or other minor crimes and were strip searched pursuant to the policy and practice of the Clinton County Sheriff's Department and the County of Clinton. The questions of whether the alleged policy and practice existed, whether they were unconstitutional, and whether defendants are liable are subject to generalized proof and are common to all potential class members.[4] These issues predominate over those issues that are subject to individualized proof. *See, e.g., Augustin v. Jablonsky (In re Nassau County Strip Search Cases)*, 461 F.3d 219, 228 (2d Cir. 2006); *Kelsey*, 2007 WL 603406 at *12. Further, the division of the class into two subclasses heightens the predominance of issues common to the class members.

Further, a class action is superior to other available methods for the fair and efficient adjudication of this controversy. Given the size of the class and the predominance of issues subject to generalized proof, the class action procedure will clearly increase the efficiency of adjudication and the uniformity of outcome of the claims. Also, it is probable that many members of the class would not have the resources to pursue their claims individually, and they are unlikely to wish to pursue their claims in separate actions. Nor is there any reason to believe that the

---

[4] The fact that the unconstitutionality of the alleged blanket strip search policy is well established does not eliminate the issue as a factor in determining predominance. Rather, as the Second Circuit has noted, "resolved issues bear on the key question that the [predominance] analysis seeks to answer: whether the class is a legally coherent unit of representation by which absent class members may fairly be bound." *Augustin v. Jablonsky (In re Nassau County Strip Search Cases)*, 461 F.3d 219, 228 (2d Cir. 2006).

prosecution of separate actions would result in better outcomes for the claimants. In light of the nature of the issues and the flexibility accorded to courts in handling class actions, it is unlikely that the management of this case as a class action will present inordinate difficulties. Indeed, in *Augustin*, in directing certification of a class action as to liability for a blanket strip search policy, the Second Circuit observed that "when plaintiffs are 'allegedly aggrieved by a single policy of defendants,' such as the blanket policy at issue here, the case presents 'precisely the type of situation for which the class action device is suited' since many nearly identical litigations can be adjudicated in unison." 461 F.3d at 228 (quoting *In re Visa Check*, 280 F.3d at 146).

The Court notes that the existence of defenses with respect to individual plaintiffs, such as whether a particular strip search was conducted based on contemporaneously held suspicion, does not foreclose certification; such an inquiry will concern only a limited number of plaintiffs. *See id.* at 230. Plaintiff has met the requirements of Rule 23(b)(3).

**Rule 23(b)(2)**

Having determined to certify the class under Rule 23(b)(3), the Court need not consider whether certification under Rule 23(b)(2) would also be appropriate. *See Augustin*, 461 F.3d at 230, n.4; *In re Visa Check*, 280 F.3d at 147.

**Complete or partial certification**

An argument may be made that the class should be certified only on the issue of liability, because the issue of damages is likely to involve individualized evidence. As the Second Circuit states:

> There are a number of management tools available to a district court to address any individualized damages issues that might arise in a class action, including: (1) bifurcating liability and damage trials with the same or different juries; (2) appointing a magistrate judge or special master to

-10-

> preside over individual damages proceedings; (3) decertifying the class
> after the liability trial and providing notice to class members concerning
> how they may proceed to prove damages; (4) creating subclasses; or (5)
> altering or amending the class.

*In re Visa Check*, 280 F.3d at 141 (footnote omitted); *accord Augustin*, 461 F.3d at 231.  Clearly, the Court has the flexibility to deal with management issues as they arise.  At this point, denial of certification regarding damages or other issues is not warranted.  The case in its entirety is certified as a class action.

**Appointment of class counsel**

Plaintiff's attorneys seek appointment as class counsel pursuant to Rule 23(g). In appointing class counsel, the Court must determine that counsel will "fairly and adequately represent the interests of the class."  Rule 23(g)(1)(B).  The Court should consider "the work counsel has done in identifying or investigating potential claims in the action, counsel's experience in handling class actions, other complex litigation, and claims of the type asserted in the action, counsel's knowledge of the applicable law, and the resources counsel will commit to representing the class."  Rule 23(g)(1)(C)(i).  Also, the Court "may consider any other matter pertinent to counsel's ability to fairly and adequately represent the interests of the class" and "may direct potential class counsel to provide information on any subject pertinent to the appointment[.]"  Rule 23(g)(1)(C)(ii),(iii).

The Court has reviewed the complaint, the progress of the case, and the lengthy submissions on the instant motion.  Elmer Rogert Keach, III, Esq., Beranbaum, Menken & Ben-Asher, LLP, Cuneo, Gilbert & LaDuca, LLP, and The Mason Law Firm, PLLC, have all previously represented other plaintiffs in complex class actions.  Indeed, on February 21, 2007, Mr. Keach and counsel from Beranbaum, Menken & Ben-Asher, LLP obtained class certification

-11-

for the plaintiffs in *Kelsey v. County of Schoharie*, 2007 WL 603406 (N.D.N.Y.). The evidence establishes that the requirements of Rule 23(g)(1)(B) and (C) are satisfied.[5]

**Intervention**

As stated, the Court adopts plaintiff's proposal that the class be divided into Class A and Class B. Plaintiff's reply memorandum of law states:

> In the event that the Court determines that Phyllis Mitchell is not an adequate representative of Class (b), Plaintiff respectfully requests that certification be preliminarily granted and that Plaintiff be provided the opportunity to intervene Paul Bachmann, who has agreed to serve as class representative (Menken affidavit), as a new party to represent this subclass.

Included in plaintiff's reply papers is an affidavit by Paul Bachman, who states that on November 9, 2003, he was strip searched upon admission into Clinton County Jail on a charge of criminal possession of marijuana in the fourth degree, a class A misdemeanor. *See* New York Penal Law § 221.15. Mr. Bachman's affidavit is accompanied by an affirmation from one of plaintiff's attorneys, Bruce E. Menken, Esq., stating that he has been retained by Mr. Bachman and that Mr. Bachman has agreed to undertake the responsibilities and duties of a class representative.

The Court adopts plaintiff's proposal that the named plaintiff Phyllis A. Mitchell should represent Class A and that a person whose claim arose after October 24, 2003 should intervene as a representative plaintiff for Class B. This is particularly desirable because, in view of the

---

[5] The issue raised by defendants concerning the timeliness of plaintiff's counsel's handling of an offer under Fed. R. Civ. P. 68 does not affect the Court's determination. Even assuming *arguendo* that counsel's handling of the offer was not in all respects proper, it is the type of minor matter that arises occasionally in litigation and does not reflect against counsel's overall competence.

conflicting record evidence regarding defendants' policy and practice prior to the October 24, 2003 memo and the effect of that memo on subsequent policy and practice, certain evidentiary and procedural issues in the two subclasses may diverge as the case proceeds. Because intervention by Mr. Bachman was proposed in plaintiff's reply papers, defendants have not had an opportunity to respond. Accordingly, the Court directs plaintiff's counsel to make a formal motion for intervention by Mr. Bachman or some other proposed representative plaintiff for Class B. Presently, the named plaintiff may properly represent the entire class; accordingly, there is no reason to stay the progress of the action.

## CONCLUSION

It is therefore

ORDERED that plaintiff's motion for class certification (Dkt. No. 35) is granted; and it is further

ORDERED that the following two subclasses are certified:

> Class A
> All persons who were placed into the custody of the Clinton County Jail
> after being charged with misdemeanors, violations, violations of probation
> or parole, traffic infractions, civil commitments or other minor crimes and
> were strip searched upon their entry into the Clinton County Jail pursuant
> to the policy, custom and practice of the Clinton County Sheriff's
> Department and the County of Clinton, from February 28, 2003 until
> October 24, 2003. Specifically excluded from the class are defendants and
> any and all of their respective affiliates, legal representatives, heirs,
> successors, employees or assignees.
>
> Class B
> All persons who were placed into the custody of the Clinton County Jail
> after being charged with misdemeanors, violations, violations of probation
> or parole, traffic infractions, civil commitments or other minor crimes and
> were strip searched upon their entry into the Clinton County Jail pursuant
> to the policy, custom and practice of the Clinton County Sheriff's
> Department and the County of Clinton, from October 24, 2003 through the

        date on which the Clinton County Sheriff's Department and/or the County of Clinton cease or ceased, or are enjoined from, enforcing their unconstitutional policy, practice and custom of conducting strip searches absent reasonable suspicion. Specifically excluded from the class are defendants and any and all of their respective affiliates, legal representatives, heirs, successors, employees or assignees.

and it is further

    ORDERED that Phyllis A. Mitchell is appointed representative plaintiff for the entire class pending intervention by a representative for Class B, whereupon Ms. Mitchell shall become the representative plaintiff for Class A; and it is further

    ORDERED that plaintiff's attorneys of record are appointed as class counsel; and it is further

    ORDERED that plaintiff shall move formally within 15 days for intervention by Paul Bachman or some other proposed representative plaintiff for Class B, that defendants shall submit any responding papers within 15 days thereafter, and that plaintiff's reply, if any, shall be submitted within 7 days thereafter.

    IT IS SO ORDERED.

July 5, 2007
Syracuse, New York

_____
Norman A. Mordue
Chief United States District Court Judge